John FARINARO, Plaintiff,

v.

Thomas COUGHLIN, et al., Defendants.

No. 84 Civ. 858 (SWK).

United States District Court,
S.D. New York.

Aug. 6, 1986.

Robert Abrams, Atty. Gen., State of N.Y., New York City by Eugene Murphy, for defendants.

John Farinaro, pro se.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff John Farinaro brings this action *pro se* pursuant to 42 U.S.C. § 1983 claiming that officials at Green Haven Correc-

tional Facility (Green Haven) have violated his constitutional rights. He also makes various claims under New York State law. Named as defendants are Thomas Coughlin, Commissioner of the New York State Department of Correctional Services, Charles Scully, Superintendent of Green Haven and a Mr. Gallagher, the program assignment coordinator at Green Haven.

This case is presently before this Court on defendants' motion for summary judgment pursuant to F.R.Civ.P. 56(b). The defendants have thus far apparently refused to answer plaintiff's interrogatories. Neither have they sought any relief from plaintiff's interrogatory requests. In deciding the motion the Court will consider whether the failure to provide discovery has prejudiced the plaintiff and if so, whether to deny the motion on that basis.

In his complaint, Farinaro raises eight nominal claims for relief. These nominal claims essentially reduce to three causes of action. First, in his first and second claims for relief, Farinaro alleges Green Haven required him to participate in its industrial labor programs without consideration of his health in violation of N.Y.Correct.Law Art. 4, § 70(2)(c) (McKinney's Supp.1986), the New York State Constitution, the United States Constitution, and 42 U.S.C. § 3750b. Second, in his third claim for relief, Farinaro alleges that he was transferred from Green Haven to Attica without a hearing in violation of his due process rights. Third, Farinaro's fourth, fifth and sixth claims allege that the defendants inserted incorrect information in his file about his participation in Green Haven's work program in violation of his due process and equal protection rights. Finally, Farinaro's seventh and eighth claims do not add any substantive causes of action as he only alleges that defendants Coughlin and Scully breached their duty to him and that all defendants acted in concert and under color of official right.

■ Farinaro also alleged in his complaint that Mr. Gallagher said he would be placed in keeplock status for complaining about performing industrial labor.[1] Farinaro stated in his affidavit in opposition to defendants' summary judgment motion that he was placed in keeplock without a hearing. He most clearly claimed that these facts created a cause of action in a traverse to defendant's answer, where he asserted that placement in keeplock violated his due process rights. Although a traverse is not listed as a pleading in the Federal Rules of Civil Procedure, the Court is under an obligation to construe a *pro se* plaintiff's complaint broadly. The Court will thus consider Farinaro as asserting a fourth cause of action for being placed in keeplock in violation of his due process rights.

A motion for summary judgment lies only when there is no genuine issue of material fact. This Court's role is to determine whether there are issues to be tried. *Heyman v. Commerce and Ind. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). The burden is on the moving party to show that no such issues exist. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Heyman*, 524 F.2d at 1320. Nonetheless, "the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (emphasis in original). Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact.

Based on the Court's consideration of the parties' submissions, the Court finds there is no genuine issue as to the following material facts. Plaintiff was transferred

---

**1.** "Keeplock" is a phrase which generally describes a form of punishment by which an inmate is confined to his cell, deprived of almost all contact with the rest of the prison population, and afforded limited access to physical activities or other prison programs. *See McKinnon v. Patterson*, 568 F.2d 930, 932, 936 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

to Green Haven in January, 1983. Within ten days of his arrival at Green Haven, plaintiff attended a meeting conducted by defendant Gallagher at which Gallagher told him that Green Haven policy requires all new inmates to perform industrial work for at least ninety days. Plaintiff informed Gallagher that he did not want to do industrial work, but preferred to work in the prison bakery or mess hall. For the next two months plaintiff did not work, although he submitted numerous requests to defendant Gallagher for bakery or mess hall work. On April 12, 1983, defendant was assigned to industrial work in the furniture factory. He began work sometime thereafter. He worked until June 3, when he was put on hold, awaiting transfer to Attica, which occurred on June 6.

A number of facts are at issue. First, there is an issue as to the extent of Farinaro's illness and whether Farinaro informed defendant Gallagher that his health would be threatened if he were forced to do industrial work. Farinaro claims he has medical problems which preclude him from doing industrial work, although he does not clearly describe his condition. He does claim he was told in 1971 that he possibly had liver cancer. These assertions are not rebutted by any evidence submitted by the defendants. Second, there is an issue as to whether Farinaro actually refused to accept industrial work or whether he simply strongly requested another assignment. He asserts in his complaint that he did not refuse to do industrial work, and that once he was assigned to a particular industrial job, he took it. These assertions are not contradicted by the State. Third, there is an issue as to the reason Farinaro was transferred from Green Haven. He submits evidence that he was transferred because he refused to accept a suitable work assignment, which, he claims, was erroneous because he was working at his assigned job when transferred. Finally, the state offers no evidence to rebut plaintiff's claim that he was placed in keeplock status without a hearing, and plaintiff's contentions put that fact in issue.

## THE MANDATORY WORK PROGRAM

Farinaro claims that the work program constitutes cruel and unusual punishment and violates his due process rights in violation of the first, fifth, eighth, ninth, thirteenth, and fourteenth amendments to the United States Constitution. The only amendment applicable to the facts of this case is the eighth amendment.

 The eighth amendment prohibits deliberate indifference to a prison inmate's serious medical needs. *See Dean v. Coughlin*, 623 F.Supp. 392, 401 (S.D.N.Y. 1985). Farinaro, however, does not assert any serious medical needs. He merely states that a number of years ago he was told he might have liver cancer. Such a vague claim does not rise to the level of a serious medical need, which requires a specific showing of pain, discomfort, or risk to health. *See id.* at 401.

 The eighth amendment also protects prisoners from work programs if the work is medically prohibited, causes great physical hardship, or is a threat to life or health. *Woodall v. Partilla*, 581 F.Supp. 1066, 1077 (N.D.Ill.1984); *Talley v. Stephens*, 247 F.Supp. 683, 687 (E.D.Ark. 1965). Farinaro's vague assertions that his health would be endangered by industrial work do not state such a claim. He does not assert any specific injuries or other damages to his general health, *Fidtler v. Rundle*, 316 F.Supp. 535, 536 (E.D.Pa.1970) nor does he claim that a particular disability made the labor cruel to him. *McLaughlin v. Royster*, 346 F.Supp. 297, 311 (E.D. Va.1972).

Farinaro claims that the mandatory work program also violates his rights under 42 U.S.C. § 3750b, which was part of the Law Enforcement Administration Act, (LEAA). This section was, however, omitted from LEAA when the Act was revised in 1979. P.L. 96–157, 93 Stat. 1167. It thus offers no protection to Farinaro.

There are thus no material facts in dispute as regards Farinaro's claim that the mandatory work program violates federal

law. Even if the disputed facts were resolved in Farinaro's favor, this would fail to make out an eighth amendment claim. Summary judgment is granted in favor of the defendants on these claims.

■ The Court declines to exercise pendent jurisdiction over Farinaro's claims that the work program violates state law. Since the Court has dismissed plaintiff's federal claims against the mandatory work program, it would be unwise to intrude upon the state and adjudicate plaintiff's state law claims.

## TRANSFER TO ATTICA

Farinaro claims that his transfer from Green Haven to Attica violated the first, fifth, ninth, thirteenth and fourteenth amendments to the United States Constitution, as well as the regulations, policies, and directives of the New York Department of Correctional Services (DOCS). The Court construes plaintiff's claim to be that his liberty interest in remaining at Green Haven was violated without due process.

■ In *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), the Supreme Court ruled that a prisoner's liberty interest in remaining in a particular prison is not a liberty interest protected under the fourteenth amendment. *Id.* at 224–25, 96 S.Ct. at 2538–39. Thus, unless a prisoner can point to an independent source in state law which creates a liberty interest in remaining at a certain prison, due process is not required before a prisoner can be transferred.

■ Farinaro claims that Paragraph VI(D) of Albany Directive # 0053 creates a liberty interest in his remaining in Green Haven except upon his failure to participate in an assigned program. The directive reads, "The program committee shall evaluate any inmate who has failed to participate in any program assigned by the facility staff and recommend transfer, if appropriate." Although the directive, on its face, might be construed to condition transfer on bad behavior, the Directive must be read in the context of New York

law as a whole, not merely one part of state law. *See Montanye v. Haymes,* 427 U.S. 236, 242–44, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 (1976) in determining whether New York law created a liberty interest in remaining at a particular prison, the Court examined New York State statutes and regulations regarding prison assignment and transfer.

Section 23(1) of the New York Corrections Law provides "the Commissioner of Correction shall have the power to transfer inmates from one correctional facility to another." This provision vests the Commissioner with discretion to transfer prisoners from one facility to another. *See e.g., Shumate v. New York,* 373 F.Supp. 1166, 1167 (S.D.N.Y.1974); *Greg v. Scully,* 108 A.D.2d 748, 485 N.Y.S.2d 94, 96 (2d Dept.1985); *Cole v. Smith,* 84 A.D.2d 942, 446 N.Y.S.2d 682, 683 (4th Dept.1981); *Johnson v. Ward,* 64 A.D.2d 186, 409 N.Y. S.2d 670, 672 (3rd Dept.1978), unless the transfer will substantially alter the inmate's sentence. *Allegretti v. Coughlin,* 81 A.D.2d 958, 439 N.Y.S.2d 691, 692 (3rd Dept.), *appeal dismissed,* 54 N.Y.2d 829, 443 N.Y.S.2d 1033, 427 N.E.2d 1193 (1981); *Batista v. Zelker,* 39 A.D.2d 343, 334 N.Y. S.2d 277, 280 (2d Dept.1972).

Albany Directive # 0053 must be read in light of the Commissioner's discretion to transfer. As such, the Directive is merely a system the Commissioner has established to assist him in exercising his discretion to transfer. When Green Haven's program committee finds transfer of a prisoner appropriate, it recommends transfer to the Commissioner who has discretion to adhere to the recommendation or not. Furthermore, the Directive does not impede the Commissioner's statutory authority to transfer inmates in his discretion. Even in light of Directive # 0053 the Commissioner may order a prisoner transferred, whether the program committee has made a recommendation or not.

Thus, Directive # 0053 does not create a liberty interest in continued incarceration at Green Haven. Thus, the fourteenth amendment did not require a hearing be-

fore Farinaro was transferred to Attica. The disputed facts as to the basis for Farinaro's transfer are immaterial, and summary judgment is granted in favor of the defendants on this claim.

## LOCKUP WITHOUT A HEARING

■ In *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), a prisoner was placed in segregation after allegedly violating prison regulations. He did not receive a disciplinary hearing until two days after he was placed in segregation. *Id.* at 7, 101 S.Ct. at 175. The Court suggested, although it did not rule, that segregation of a prisoner without a hearing may violate the fourteenth amendment if the absence of a hearing is not justified by emergency conditions or risk of violence. *Id.* at 11, 101 S.Ct. at 177.

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Court restricted any expansion of *Hughes* by stating that the due process clause of the fourteenth amendment does not create a liberty interest in being confined to a general population cell as opposed to administrative segregation. *Id.* at 466–67, 103 S.Ct. at 868–69. The Second Circuit views *Helms* as also holding that a prisoner has no constitutional liberty interests in remaining in the general prison population as opposed to disciplinary segregation. *Sher v. Coughlin,* 739 F.2d 77, 80–81 (2d Cir.1984).[2] Rather, due process protections are invoked only if state law creates a liberty interest in remaining in the general prison population. *Deane v. Dunbar,* 777 F.2d 871, 875 (2d Cir.1985); *Sher,* 739 F.2d at 81.

Absent a federal constitutional liberty interest in remaining in segregation, the Court must turn to New York law to determine whether it creates a liberty interest in remaining in a general prison population as opposed to segregation. *Deane,* 777 F.2d at 875; *Sher,* 739 F.2d at 81.

New York law creates two different statutory regimes for administrative segregation and disciplinary segregation. The Second Circuit has ruled that New York law creates a liberty interest in remaining out of disciplinary segregation, but does not create such an interest in remaining out of administrative segregation. *Sher,* 739 F.2d at 82. An examination of the relevant statutes supports this. New York State law relating to administrative segregation grants the Commissioner of Corrections discretion to classify prisoners. *See* N.Y. Correct.Law § 137(1) (McKinney's Supp. 1986), N.Y.C.R.R. §§ 300.3(5), 304(1)(a)(4), 304.2(a). The statutes and regulations do no more than regulate decisionmaking. They do not require hearings, findings, or any other action before transfer or reclassification can be effected and thus create no liberty interest. New York statutes and regulations regarding prison discipline, however, limit the discretion of prison officials to a sufficient extent to create a liberty interest. *See* N.Y.Correct.Law § 138(3) and (5); 7 N.Y.C.R.R. § 250 *et. seq.*

At this stage of the litigation, however, issues remain as to whether Farinaro was placed in segregation and if so, the grounds for the segregation. Since defendants were not on notice that the Court would treat this claim as a cause of action, the Court will allow defendants, if, they desire, to file within thirty days a factual affidavit outlining the facts underlying the alleged keeplock. The plaintiff will then have two weeks to respond.

## EXPUNGEMENT OF RECORD

■ A prisoner has a limited constitutional right to have incorrect information expunged from his record. *Paine v. Bak-*

---

**2.** In *McKinnon v. Patterson,* 568 F.2d 930 (2d Cir.1977); *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978) the Second Circuit, relying heavily on *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), found that keeplock was a form of punishment which constituted a substantial deprivation of liberty, and thus the fourteenth amendment required

due process before it could be imposed. This type of analysis of constitutionally protected liberty interests, which focused on the extent of the deprivation, shifted, however, in later cases such as *Hewitt* and *Sher.* There, the Courts focused on the discretion prison officials had to deprive a prisoner's liberty as opposed to the degree of the deprivation.

*er,* 595 F.2d 197 (4th Cir.), *cert. denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). In *Paine,* a prisoner claimed that information in his prison file was inaccurate, and was relied upon in his parole denial. *Id.* at 201. The Fourth Circuit ruled that a claim of constitutional magnitude arises when a prisoner alleges there is information in his file, the information is false, and the information is likely to be relied upon in a constitutionally significant way. *Id.* Expanding on these elements, the court stated that the prisoner must allege that particular information is false. *Id.* There must be a probability that the information will be relied upon for decisions about issues such as parole or good time credits, not merely for decisions about internal matters such as work assignments. *Id.* at 201–02. The error must not be one which is merely technical, it must be about the inmate's prior criminal record or disciplinary offenses. Finally, the Court ruled that as a jurisdictional prerequisite to filing an action to enforce this right under 42 U.S.C. § 1983, a prisoner must allege that he requested that the information be expunged and that prison officials refused. *Id.* at 202–203. This right to have erroneous information expunged from a prison record has been approved of in other circuits. *See Pruett v. Levi,* 622 F.2d 256, 258 (6th Cir.1980); *Silverman v. Pennsylvania,* 527 F.Supp. 742, 745 (W.D.Pa.1981), *aff'd,* 707 F.2d 1395 (3d.Cir.1983).

■ In the present case, Farinaro has submitted evidence which puts all the relevant elements of this cause of action into issue. There is an issue of fact as to whether there is inaccurate information in his record about his disciplinary record of the type that is likely to be relied upon to a constitutionally significant degree. He also alleges that he has filed a grievance requesting that the information be expunged, but that prison officials refused. Defendants' summary judgment as to this claim is thus denied.

## SUMMARY

In sum, defendants' motion for summary judgment is granted as to Farinaro's claim

of cruel and unusual punishment and improper transfer to Attica, and denied as to Farinaro's claim of the inaccurate information in his record. The defendant may submit supplementary papers within 30 days as to plaintiff's claim of improper keeplock.

SO ORDERED.