**Dr. Abdel–Jabbar MALIK, Plaintiff,**

v.

**Lt. MILLER and C.O. Dylag,
Defendants.**

**No. CIV–84–943C.**

United States District Court,
W.D. New York.

Feb. 17, 1988.

Dr. Abdel–Jabbar Malik, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y. (William D. Maldovan, Asst. Atty. Gen., of counsel), Buffalo, N.Y., for defendants.

CURTIN, Chief Judge.

In this action, plaintiff is seeking compensatory and punitive damages pursuant to 42 U.S.C. § 1983 for an alleged violation of his constitutional rights as a result of his confinement in the Special Housing Unit of Attica Correctional Facility on June 29, 1984, and his being required to undergo a strip frisk upon his admission to the Special Housing Unit.

Cross motions for summary judgment have been filed in this case, which is the consolidation of two files concerning the same incident. The plaintiff had moved for summary judgment (Item # 9) in *Malik v. Dylag* Civ–84–1181C, and the defendant in that case had filed a cross motion for summary judgment (Item # 19) before that case was consolidated with *Malik v. Miller* Civ–84–943C on November 20, 1985, to become *Malik v. Miller and Dylag,* At the time that the cases were consolidated, defendant Miller also had filed a motion to dismiss, pursuant to F.R.C.P. 12(b), which this court is considering as a motion for summary judgment (Item # 10, 50).

## FACTS

The undisputed facts are that the plaintiff was brought before a hearing officer on June 29, 1984. During this hearing, there was a disturbance, and the plaintiff was escorted from the hearing room to his cell by two corrections officers. While being escorted through the corridors, an altercation occurred between the plaintiff and one of his escorts, during which plaintiff picked up a nearby "squeegee" and threatened the officer. As a result of this behavior, the plaintiff was keeplocked in his cell for approximately one hour and then taken to the Special Housing Unit where he remained on "detention admission" status for a period of five days while he awaited a hearing on charges stemming from this incident. There is no dispute

that the plaintiff's confinement in the Special Housing Unit was authorized by defendant Lt. Miller.

Upon admission to the Special Housing Unit, plaintiff was subjected to a strip frisk, during which he was required to open his mouth moving his tongue from side to side, run his hands through his hair, allow his ears to be visually examined, lift his arms to expose his armpits, spread his fingers to expose the areas between his fingers, lift his feet, lift his testicles to expose the area behind them, and bend over and spread the cheeks of his buttocks to expose his anus to the frisking officer, defendant Dylag.

Plaintiff claims that his placement in the Special Housing Unit prior to a hearing was unlawful, as he did not present an immediate threat to the security of the institution, and further, that the strip frisk was not conducted in accordance with directive 4910, which in turn adopts the provisions contained in a consent decree in *Hurley et al v. Coughlin et al,* 77–CV–3847 (S.D.N.Y.)

The defendants claim that the plaintiff's placement in the Special Housing Unit on "detention admission" status was proper as he did in fact present an immediate threat to the security of the institution, as evidenced by his attack on a corrections officer. They further argue that, as "detention admission" is an administrative, rather than punitive placement, no due process rights are implicated in the plaintiff's placement in the Special Housing Unit under these circumstances.

## DISCUSSION

█ As to plaintiff's claim against defendant Miller, that his placement in the Special Housing Unit while awaiting a hearing was in violation of his constitutional rights, such "administrative" confinement, pending a disciplinary hearing, may be imposed upon an inmate without the more extensive procedural due process protections required by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Bolden v.*

*Alston,* 810 F.2d 353 (2d Cir.1987); *Sher v. Coughlin,* 739 F.2d 77 (2d Cir.1984) Therefore, defendant Miller's motion for summary judgment is granted.

Plaintiff's claim that the strip frisk was conducted in a constitutionally offensive manner is less amenable to resolution by summary judgment.

Plaintiff claims, first, that he should not have been subjected to the strip frisk at all. Directive 4910, and the *Hurley* decree both provide for a strip frisk upon initial entry into a Special Housing Unit, which is described as housing used for disciplinary or protective purposes. Plaintiff claims that, as his placement in the Special Housing Unit was neither disciplinary nor protective, he should not have been subjected to any strip frisk.

Plaintiff also claims that the strip frisk was conducted in front of 10 to 15 people, and in a corridor where he was fully exposed to people not involved in the search.

The *Hurley* decree, and Directive 4910, both require that

"every precaution shall be taken to conduct ... strip frisks in an area or location which provides privacy. Only the officer conducting the ... strip frisk should be present ..., except that a supervisory officer may observe the search. In exigent circumstances, the presence of additional officers and/or a supervisor may be necessary: .. (2) When there is reason to believe that the inmate will actively resist the ... strip frisk, thereby forcing the presence of other officers." (Directive 4910, see also page 8 of the *Hurley* decree, attached to defendant's cross motion for summary judgment, Item # 19).

The affidavits submitted by defendant Dylag in this action, create some degree of confusion as to the number and identity of other people who may or may not have been present during the plaintiff's strip frisk.

In paragraph 7 of an affidavit dated March 9, 1987, defendant Dylag claims that he conducted the strip frisk under the supervision of Sgt. Duncan and "another cor-

rection officer." In the next paragraph of the same affidavit, defendant Dylag refers to "the presence of other *officers* other than myself and Sgt. Duncan" at the strip frisk. (emphasis added)

In defendant's supplemental brief, filed on November 17, 1987 (Item # 52), defendants' attorney makes reference to the presence of a physician's assistant and a video camera operator. Without commenting on the propriety, or lack thereof, of the presence of these other people during the strip frisk, it must be said that the defendants' submissions have not established that there are no genuine issues of fact concerning the conduct of the strip frisk of the plaintiff.

 A videotape was made of the incident and has been viewed by the court. The tape neither supports nor discredits the statements made by either party. The plaintiff claims that the camera was used in such a way as to avoid recording the presence of additional people who were present at the strip frisk. In fact, the videotape does indicate that seven or more people may have been present at the strip search. This number may not be improper, if the defendants can prove that they had a reasonable belief that the plaintiff might actively resist the strip frisk. However, this is a question of fact which cannot be resolved by summary judgment.

Another question of fact is the location of the strip frisk. It appears, from the videotape taken during the incident, that the strip frisk was conducted in a corridor or reception area. Directive 4910 and the *Hurley* decree require that every effort be made to conduct a strip frisk in private, without onlookers, and in areas having restricted access and/or traffic.

This is no small point. The conduct of strip frisks, as implicitedly recognized in the *Hurley* decree and directive 4910, presents a dangerous opportunity for the dehumanizing humiliation of inmates subjected to such a search. It is for this reason that such specific safeguards have been required for this procedure.

## CONCLUSION

In light of the foregoing, defendant Miller's motion for summary judgment is hereby ORDERED granted. However, defendant Dylag's and plaintiff's cross motions for summary judgment are hereby ORDERED denied, as genuine material issues of fact exist as to the conduct of the strip frisk.