NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Plaintiff,

v.

Michael J. ALBERTS, James R. Alberts, Cassandra M. Sheehan, Raymond Cosgrove, Penelope A. Boyle, John C. Maucere, Jerry Silva, Michael L. Metheny, H.U.A. Resources, Inc., Alton Jones, Arthur Lawson, John L. Muller, Michael J. O'Connell, Randolph K. Pace, Southern Companies, Inc., Michael J. McCann, William Curran, James M. McCabe, Harold A. Thau, Patrick J. Rooney, Van Allen Capital Corp., and Robert T. Norton, Defendants.

No. 88 Civ. 3452 (RWS).

United States District Court, S.D. New York.

June 25, 1990.

As Amended June 26, 1990.

Motion for Vacutur and Reconsideration Aug. 29, 1990.

Hart & Hume, New York City (Benjamin D. Lentz, of counsel), for plaintiff.

Irwin and Post, New York City (Frederick B. Polak, of counsel), for defendants Robert Norton, James McCabe, Raymond Cosgrove, William Curran and John Muller.

Jerome R. Halperin, New York City (Guy S. Halperin, of counsel), for defendants Jerry Silva and Michael McCann.

Baer Marks & Upham, New York City (Eugene R. Scheiman, of counsel), for defendant Randolph K. Pace.

SWEET, District Judge.

Plaintiff, Northwestern National Insurance Company of Milwaukee, Wisconsin ("Northwestern") has moved for leave to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) and for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) on the basis of an amended complaint asserting the grounds of equitable, common law and contractual surety rights of exoneration and *quia timet.* Defendants Raymond Cosgrove, William Curran, James McCabe, John Muller and Robert Norton (the "Cosgrove Defendants"), joined by defendants Randolph K. Pace ("Pace"), Jerry Silva ("Silva"), and Michael McCann ("McCann"), cross-move for leave to amend their Answer and Counterclaim to assert additional affirmative defenses and causes of action and pursuant to Federal Rule of Civil Procedure 20(a) for leave to join Allan Esrine (a/k/a "Ivan Esrine") ("Esrine") as a counterclaim defendant. For the reasons set forth below, plaintiff's motion for leave to amend is granted as unopposed. Plaintiff's motion for a preliminary injunction is granted. Defendants cross-motion is granted in part as set forth below.

*Parties*

Northwestern is a corporation organized under the laws of the State of Wisconsin with its principal place of business in the State of Wisconsin. Northwestern acted as surety to the limited partners. Benjamin D. Lentz ("Lentz") is and was counsel for Northwestern during the relevant time periods.

Defendant Michael J. Alberts is an individual citizen of the State of New Jersey residing at 56 Winding Way, Little Silver, N.J. 07739.

Defendant James A. Alberts is an individual citizen of the State of New Jersey residing at 45 Birchwood R., Glen Rock N.J. 07452.

Defendant Richard J. Alberts is an individual citizen of the State of Florida residing at 15714 Warbler Place, Tampa, FL 33624.

Defendant Cassandra M. Sheehan is an individual citizen of the State of New Jersey residing at 115 Tower Hill Drive, Red Bank, N.J. 07701.

Defendant Raymond J. Cosgrove is an individual citizen of the State of New Jersey residing at 49 Wardell Avenue, Rumson, N.J. 07760.

Defendant Penelope A. Boyle is an individual citizen of the State of New Jersey residing at 19 Riverlawn Drive, Fair Haven, N.J. 07701.

Defendant John C. Maucere, Jr. is an individual citizen of the State of New Jersey residing at 51 Maddaset Cellar Avenue, Scotch Plains N.J. 07076.

Defendant Jerry Silva is an individual citizen of the State of New York residing at 2594 Norton Place, Bellmore, N.Y. 11710.

Defendant Michael L. Methany is an individual citizen of the State of Kentucky residing at 11900 East Arbor Drive, Anchorage, Ky 40223.

Defendant H.U.A. Resources, Inc. is a New Jersey corporation having its principal place of business at Box 8250 Red Bank, N.J. 07701.

Defendant Alton Jones is an individual citizen of the State of Kentucky residing at Rt. # 2–578, London, Ky 40505.

Defendant Arthur Lawson is an individual citizen of the State of Kentucky residing at RD. # 2 Box 674, London, Ky 40505.

Defendant John J. Muller., Jr. is an individual citizen of the State of New Jersey residing at 129 Rumson Road, Little Silver, N.J. 07739

Defendant Michael J. O'Connell is an individual citizen of the State of Kentucky residing at 209 Pleasant View Avenue, Louisville, Ky 40206.

Defendant Randolph K. Pace is an individual citizen of the State of New York residing at 180 East End Avenue, New York N.Y. 10128.

Defendant Michael J. McCann is an individual citizen of the State of New York residing at 620 Fifth Avenue, New York, N.Y. 10020.

Defendant Southern Companies, Inc. is a New Jersey corporation having its principal place of business at 655 Shrewsbury Avenue, Shrewsbury, N.J. 07701.

Defendant William W. Curran is an individual citizen of the State of New Jersey residing at 38 Park Street, Apt. 10–A, Florham Park, N.J. 07832.

Defendant James Mason McCabe is an individual citizen of the State of New Jer-

sey residing at 691 Harding Road, Little Silver, N.J. 07739.

Defendant Harold A. Thau is an individual citizen of the State of Connecticut residing at 19 Saugatuck River Road, Weston, Ct 06883.

Defendant Patrick J. Rooney is an individual citizen of the State of New York residing at 94 McDougal Street, New York, N.Y. 10012.

Defendant Van Allen Capital Corp. is a New York Corporation having its principal place of business at 11 Broadway, New York, N.Y. 10004.

Defendant Robert T. Norton is an individual citizen of the State of New Jersey residing at 114 Elm Street, Westfield, N.J. 07090.

*Prior Proceedings*

On May 18, 1988 Northwestern instituted this diversity suit against defendants. The Cosgrove Defendants filed an Answer to the complaint in August, 1988. In an opinion of the court of July 7, 1989 ("July 7 Opinion") 717 F.Supp. 148, the Cosgrove Defendants were granted in part leave to amend their initial response to the complaint by filing a counterclaim alleging fraud (Counts I and II), breach of a duty to disclose (Count III), breach of a duty of good faith and fair dealing amounting to constructive fraud (Count IV), and failure to liquidate collateral and/or apply the proceeds thereof on a pro-rata basis to offset the alleged debts (Count V).

By letter of January 12, 1990 the Cosgrove Defendants sought to resolve discovery disputes concerning (1) the status of Esrine, a disbarred felon, who had participated in the transactions underlying this suit, allegedly as an agent of Northwestern; (2) the relationship between Northwestern and the former law firm of Finley, Kumble, Wagner, Underberg, Manley, Myerson & Casey ("Finley Kumble") whose partner was retained by defendants when allegedly the same partner was representing Northwestern on another matter; as well as (3) the circumstances surrounding Northwestern's loss of its bond rating in 1984. The letter was treated as a motion returnable on February 2, 1990. Northwestern's motion for leave to amend and preliminary injunction pursuant to the amended complaint was also returnable on this date. By letter of January 31, 1990,

the parties adjourned the motion from February 2 to February 16 allowing defendants to also move for leave to amend. By letter of February 12, the parties adjourned all three motions to March 9, 1990. Oral argument was heard on that date and the motions considered submitted. By letter of March 13, 1990 Pace, and by letter, affidavit, and memorandum of law, Silva and McCann joined in the Cosgrove cross-motion and opposition to Northwestern's motion. Corrected documentary submissions were made in April by the Cosgrove Defendants.

By order to show cause brought on June 14, 1990, and returnable the following date, Northwestern sought to preserve the status of the parties on the motions *sub judice,* in the event that the Merchant Marine Bank (the "bank") would seek to draw on a letter of credit, thereby requiring Northwestern to pay as surety for the defendants on obligations owing to the bank. Northwestern sought this preservation of the rights of all parties to prevent rendering the pending motion for *quia timet* and exoneration moot. Over opposition, by memo endorsement, the posture of the parties was considered unaltered by the bank's actions pending the outcome of the motions.

*Facts*

All of the defendants except Maucere, H.U.A., Muller, Southern, and McCabe were former limited partners of Southern Pipeline Partners ("the partnership"), an Oklahoma limited partnership which was formed for the purpose of constructing and operating a gas pipeline in southeastern Oklahoma.[1] As part of their purchase price of limited partner units of the partnership, the limited partners executed and delivered promissory notes to the partnership. The partners endorsed, assigned, and negotiated these promissory notes to Equilease Corporation ("Equilease").

To induce Equilease to purchase the promissory notes, Equilease required the limited partners to deliver a surety bond guaranteeing that the limited partners would make timely payments of principal and interest under their promissory notes. To induce Northwestern, as their surety, to issue such a bond on behalf of the limited partners as principals, each of the limited partners executed and delivered to Northwestern an application for surety bond

---

1. Default judgments have been entered against H.U.A. and Southern Companies, Inc. Michael J. Alberts and Maucere have filed bankruptcy petitions.

which contained an agreement to indemnify the surety and an estoppel letter.

Northwestern issued its Bond (the "Equilease Bond") in favor of the partnership as the named Obligee, and Equilease as the named permitted assignee. Northwestern guaranteed the limited partners' obligations under their promissory notes.

The partnership made interest and principal payments on the Equilease loan through the Spring of 1986, reducing the principal balance by approximately $925,000, and thereby reducing the balance due on each of the limited partner's notes from $185,000 to $160,000 on a per unit basis. The partnership was unable to meet payments due in June 1986 and thereafter. On or about September 30, 1986 and on or about December 16, 1986, Equilease advised Northwestern that the limited partners had defaulted in their obligations under their promissory notes, and demanded payment from Northwestern pursuant to the bond. Northwestern, as surety, made total payments of $2,095,688.66 to Equilease, on behalf of the limited partners.

In late December, Southern Pipeline Development, Inc. ("Development"), a co-general partner of the partnership and Southern Reserve, Inc. ("Reserve"), the parent company and sole shareholder of Development, advised Northwestern and Equilease of a proposed restructuring of the limited partners' promissory notes negotiated to Equilease and bonded by Northwestern. In general, the restructuring consisted of (1) the transfer of the partnership's assets to Reserve; (2) Reserve's borrowing of $6,845,000 from a new financial institution; (3) the assumption by the former limited partners of the $6,845,000 borrowing by execution of assumption agreements; (4) Northwestern issuing a financial guarantee bond in favor of the new financial institution guaranteeing the payments due under the assumption agreements; (5) Reserve and Development indemnifying Northwestern against all loss, cost and expense it would incur by issuing a new financial guarantee bond, and, as collateral security for their promise to indemnify, would grant to Northwestern a first security interest/mortgage in the transportation system; and (6) Reserve's use of the $6,845,000 loan proceeds to pay Equilease the remaining monies due on the limited partners' promissory notes (less a discount), reimburse Northwestern for the payments it had made to Equilease on behalf of the limited partners, and establishment of a fund of $700,000 to make improvements to the transportation system. The restructuring was to be consummated on or before December 31, 1986. The limited partners allege that Esrine "masterminded" the entire restructuring with the goal of immunizing Northwestern from "attack" by the limited partners and that throughout, Esrine and Northwestern were "one in [sic] the same."

Allegedly unbeknownst to Alberts or the Cosgrove Investors, Finley Kumble had been representing Northwestern since 1985 in the Gas Reclamation, Inc. Litigation ("GRI") and in litigation in California at the same time. There is no record of any correspondence advising Finley Kumble's respective clients of the potential conflict of interest. Northwestern allegedly waived this conflict of interest.

*The February 12, 1987 Closing*

At the February 12, 1987 closing, Reserve executed and delivered to the Bank its promissory note (the "Reserve Note"), in the principal amount of $6,845,000 plus interest, and a Pledge and Security Agreement both in favor of the Bank. Pursuant to the terms of the Reserve Note, the $6,845,000 principal was to be repaid as follows: $2,280,000 on December 31, 1987; $2,280,000 on December 31, 1988; $2,285,000 on December 31, 1989. In addition, quarterly interest payments were to be due on the first day of March, June, September, and December in each of the those years. The Reserve Note is secured by the Assumption Agreements executed by the defendants, which are in turn secured by Northwestern's bond delivered to the bank.

*The Defendants' Agreements With Northwestern*

To induce Northwestern to issue the substitute bond on their behalf, each of the defendants allegedly executed an "Agreement with Surety" in favor of Northwestern. Pursuant to the "Agreement with Surety" among other things, the defendants/principals requested Northwestern to issue a new bond on their behalf, and agreed to indemnify Northwestern in the event Northwestern suffered a loss by reason of its issuance of such a bond. As a further inducement to Northwestern to issue the bond, Reserve and Development each executed an indemnity agreement dated February 12, 1987 (the "Indemnity Agreement") in favor of Northwestern pursuant to which, in effect, they both agreed to indemnify and hold Northwestern harmless from all loss, cost and expense that

Northwestern may incur as a result of issuing its bond on behalf of the maker of the Assumption Agreements (Northwestern principals). As security to Northwestern for their obligation under the Indemnity Agreement, Reserve and Development also executed a "Mortgage, Assignment, Security Agreement and Financing Statement" (the "mortgage"), pursuant to which Reserve and Development granted to Northwestern a first mortgage/security interest in the transportation system.

In early April 1987, the limited partners' promissory notes, marked paid, were returned to them by Reserve. The loan Agreement between the bank and Reserve dated February 12, 1987 show payment of $4,153,743.47 via wire transfer to Equilease for the remaining obligations due under the limited partners' notes held by Equilease. A total of $2,242,652.65 was paid to Northwestern. $2,095,688.66 represented reimbursement to Northwestern for its payment to Equilease on behalf of the limited partners; $24,380.99 represented interest on the amount; and $122,583.00 represented the increased premium for the Merchants Bond. In April 1987 Equilease returned to Northwestern the Equilease Bond.

Reserve paid the quarterly installments of interest to the bank due on March 31, 1987 and June 30, 1987. Both Reserve and the makers of the Assumption Agreements (the defendants/principals) defaulted in making each of the subsequent interest payments and the first two annual installments of principal. Northwestern, pursuant to its obligations under the bond, has made payments from November 15, 1987 through November 22, 1989 totalling $5,816,807.

Counsel to the bank, Michael Van Dyke ("Van Dyke") informed Northwestern that no payments were made by the defendants/principals of the final installment of principal $2,285,000 and accrued interest scheduled to be paid on December 31, 1989 and that the bank will be making demand upon Northwestern, the surety, to make payment on behalf of the principals. As soon as demand is made upon Northwestern, Northwestern will make demand upon the defendants/principals to place it in funds pursuant to their obligation. Based upon the prior refusals of the defendants/principals to make any payments to the bank and the posture of this litigation, Northwestern anticipates that the defendants will refuse to place Northwestern in funds.

Northwestern's complaint sets forth two causes of action—for indemnity for the payments Northwestern has made on behalf of each of the makers of the Assumption Agreements, Northwestern's principals, and for declaratory relief for future payments that Northwestern would be making on behalf of the makers of the Assumption Agreements. Northwestern's proposed amended complaint is based on the same facts and underlying transactions and only seeks additionally to allege the rights of exoneration and *quia timet.*

### The Issue

In the instant complaint, Northwestern, as surety, seeks reimbursement of the monies it has paid on behalf of the defendants/principals to the bank arising out of the limited partners' refusal to honor their obligations under their assumption agreements. Northwestern now seeks leave to amend its complaint to add a new count asserting its surety rights of exoneration and *quia timet,* and moves for a preliminary injunction to enforce these rights by compelling the defendants/principals to pay into the court their respective portions of the $2,285,000 final installment (plus accrued interest) due to the bank.

### Leave to Amend

Leave to amend is granted as unopposed.

### Quia Timet and Exoneration

 *Quia timet* is a right used to protect a party against an anticipated future injury when it cannot be avoided by a present action at law, for example, by allowing a surety to compel its principal to post collateral for an anticipated liability. Exoneration is the right of a surety to compel its principal to pay for debt for which the surety's liability already has matured.

These rights are equitable, common law, and contractual rights. *Admiral Oriental Line v. United States,* 86 F.2d 201, 204 (2d Cir.1936) (Hand, J.) ("In equity, ... before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal.") (citations omitted); *Filner v. Shapiro,* 633 F.2d 139, 142 (2d Cir.1980) (court recognizes the right of a surety to demand the principal "to exonerate him from liability by discharging

the debt when due"); *Milwaukie Constr. Co. v. Glens Falls Ins. Co.,* 367 F.2d 964, 966 (9th Cir.1966) ("Not only does a bill *quia timet* lie to compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by threatened conduct of the principal."); *Fireman's Fund Ins. Co. v. S.E.K. Construction Co.,* 436 F.2d 1345, 1349 (10th Cir.1971) (*quia timet* is available when there is justifiable fear of probable injury); *Morley Constr. Co. v. Maryland Casualty Co.,* 90 F.2d 976, 977 (8th Cir.1937), *cert. denied,* 302 U.S. 748, 58 S.Ct. 266, 82 L.Ed. 578 (1937) (in addition to being reimbursed after it pays, a surety may "maintain a *quia timet* suit in equity before any payment," (quoting Pomeroy's Equity Jurisprudence § 1417 (3d Ed.)); *American Surety Co. v. Lewis State Bank,* 58 F.2d 559, 560 (5th Cir.1932) ("A surety is indeed a favorite of equity, which will extend its aid in exoneration, *quia timet* before he pays."); *Schirm v. Auclair,* 597 F.Supp. 202, 208 n. 5 (D.Conn.1984) (the surety had the right "to compel the debtor to pay the debt when it becomes due. This is the familiar common law right of exoneration."); *Georgetown College v. Madden,* 505 F.Supp. 557, 593 (D.Md.1980), *aff'd in pertinent part,* 660 F.2d 91 (4th Cir.1981) (surety has a right to compel the principal to exonerate it); *See also* 72 C.J.S. *Principal and Surety* § 303 (1975) (in equity, surety has right to compel principal to exonerate him from liability, to pay the debt, or to secure him against loss).

The Cosgrove Defendants assert that whether or not there exists a right for *quia timet* and exoneration turns on whether the 1987 Surety Agreement signed during the restructuring unambiguously replaces the 1984 Surety Agreement. Nonetheless, because the rights exist in equity and at common law, the disputed contractual foundation for the rights need not be resolved in the present motion. The only relevant contractual issue would be whether the parties contracted away the common law and equitable rights in the 1987 Agreement. Even should the 1987 agreement be construed as a failure to renew contractual rights, however, it makes no attempt to contract away common law and equitable rights. Therefore, Northwestern, even absent a contractual provision, is entitled to

invoke the equitable and common law rights of exoneration and *quia timet. See Fireman's Fund Ins. Co.,* 436 F.2d at 1349 (1971). *See also, Wingsco Energy One v. Vanguard Groups Resources 1984, Inc.,* Civ. H–86–452, 1989 WL 223756 (S.D.Tex. 1989) (unpublished memorandum and order) ("contractual, common law and equitable rights are independent, unconditional, and unqualified"). As the *Milwaukie Constr.* Court stated:

> Before maturity of the debt, or accrual of liability, for which he is surety, the surety has no right of action in equity to be indemnified against apprehended danger of loss by reason of his undertaking. After maturity, however, in the absence of a present remedy at law, although he has not paid and has not been troubled by the creditor, or asked by him to pay, he has the right, before payment, to go into a court of equity, at any time, to compel the principal to exonerate him from liability or to pay the debt, or to secure him against loss, provided no rights of the creditor are prejudiced thereby. The doctrine in such cases rests on the simple right, as between the principal and surety, that the surety has to be protected by the principal; a surety is awarded exoneration in order that mischief and circuity of action may be avoided; he is not obliged to make inroads into this own resources when the loss must in the end fall on the principal.

367 F.2d at 966 (quoting 72 C.J.S. § 303 (1951)).

The Cosgrove Defendants contend that Northwestern has failed to demonstrate that loss for which surety is obliged to pay will fall upon the principal when the underlying agreements, including the Surety Agreements, are contested as unenforceable. Additionally, the Cosgrove Defendants claim that there is no danger that the principals are transferring or secreting funds and thus the requirement that there be no adequate remedy at law is absent because Northwestern, if entitled, will be able to pursue monetary damages.

█ To invoke the common law or equitable rights of exoneration a surety must demonstrate that liability is absolute and must in the end rest with the principal, *see Admiral Oriental Line,* 86 F.2d at 204 (2d Cir.1936), whereas to invoke the doctrine of *quia timet,* a surety must show reasonable grounds for anticipating that its rights are being jeopardized and thus it will incur a

liability by the threatened conduct of the principal. –*Suits for Exoneration and Other Special Relief,* 17 Forum 344, 345 (1981) (defining the difference between the two rights). Northwestern has satisfied these conditions.

■ There is no dispute over the relations between the parties. Northwestern is the surety for the principals. Northwestern has shown that it has made payments that have come due on behalf of the defendants/principals' default on those payments to the bank. Northwestern has also shown future, if not immediate, monetary payments are due. A review of this case and the posture of the parties warrants Northwestern's fear that the Cosgrove Defendants are not going to make any payments to the bank, nor collateralize Northwestern for the remainder of this litigation.

Moreover, Northwestern's only remedy at law to enforce these rights is the instant motion. *See Wingsco* at 6 ("denial of Northwestern's requested relief will forever deny to Northwestern its ability to assert and enforce its *quia timet* and exoneration rights under the Indemnity Agreements, at common law, and in equity"). The defendant's contention that a suit for monetary damages, another remedy at law is available, is unpersuasive because the present action seeks a vindication of these rights—to be collateralized while the litigation is pending, not an ultimate settling of the accounts.

For the same reasons, the Cosgrove Defendants' position that all of the underlying agreements and circumstances of this suit indicate that the liability may not fall on the principals in the end is unavailing. The bank is holding surety liable for a debt on which principals/defendants have defaulted. Whether or not principals will be responsible in the end—when the smoke clears and judgment is rendered—is not the issue relevant to this motion. From the surety's perspective vis-a-vis the bank, the defendants/principals' liability for debts owing now and in the future must fall on the principals and thus this case is readily distinguishable from the facts presented in *Fireman's Fund Ins. Co.* where the Court found that the default by principal had yet to occur. 436 F.2d at 1350. Accordingly, pursuant to the principles of suretyship law, if the Cosgrove Defendants are not required to immediately collateralize the surety, Northwestern will lose its equitable and common law rights to be collateralized

prior to payment on obligations due or forthcoming.

## Standards for a Preliminary Injunction

In the Second Circuit, upon a request for a preliminary injunction, a court should examine the following factors:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious question going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc., v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

### Irreparable Injury

The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights. Because the rights will extinguish if not asserted prior to the final payments, Northwestern must vindicate these principles of surety law now. As the Court in *Barney* found, "[u]nless the injunctive relief requested below is granted, [Northwestern] will not be adequately secured for its obligations and will forever and irreparably lose its rights of *quia timet* and exoneration." *Northwestern Nat'l Ins. Co. v. Barney,* C89–3936 (unpublished memorandum and order) (W.D.Ohio 1988). Therefore, the loss of the rights, not the potential financial loss, constitutes the irreparable harm. *Cf. Citibank, N.A. v. Singer Co.,* 684 F.Supp. 382, 386 (S.D.N.Y.1988) (Irreparable injury found where bank's customer refused to place bank with cash collateral on demand when bank feared it would not be repaid by customer under letter of credit application and agreement).

The Cosgrove Defendants admit as much when they state: "that a [contractual] promise to collateralize Northwestern would be meaningless to Northwestern it [sic] if [sic] was forced to await the outcome of the legal action for damages." Even if Northwestern "relinquished its [contractual] rights" this same logic, defendants' logic, is equally applicable to the equitable rights—similar to but independent of the contractual rights—that as between principal and surety, surety should be protected by the principal.

### Likelihood of Success

Although the Cosgrove Defendants assert that the "substantial issues regarding

the enforceability of the agreements" preclude any finding of likelihood of success, this statement, even if true applies only to the merits of the underlying motions, not the merits of the injunction motion—the exoneration and *quia timet* claims. As the Court in *Wingsco* stated: "These contractual, common law, and equitable rights are independent, unconditional, and unqualified. Thus, Northwestern has made a sufficient showing of likely success on the merits to require issuance of the injunction." *Wingsco* at 6. Significantly, the Court granted Northwestern a preliminary injunction after previously denying Northwestern's motion for summary judgment on the merits and both the *Wingsco* and the *Barney* Courts rejected the investors claims that Northwestern could not obtain exoneration and *quia timet* relief because of the investors' defenses on the merits of the underlying claims.

### Sufficiently Serious Questions and Balance of Hardships

Under the alternative component for an injunction, there is no dispute over the seriousness of the questions raised. The Cosgrove Defendants contend, however, that as between principals with outstanding defenses and surety who is obligated to pay, surety should pay the money because that is the nature of the surety business and the surety's obligation is primary and direct. On the contrary, although a surety may be liable and have an obligation to pay the bank, the principals' liability is primary, the surety's obligations are secondary. As between the two parties, the balance of hardships decidedly tips in favor of surety who has shouldered the entire amount of payments to date. *See* 72 C.J.S. § 300 ("between principal and surety equity always lends aid for the protection of surety") (footnote omitted).

### Pre–Judgment Attachment

█ The Cosgrove Defendants state that a surety seeking a preliminary injunction for exoneration or *quia timet* must first comply with the state pre-judgment attachment statute. Nonetheless, the Cosgrove Defendants' sole support for this proposition is a Tenth Circuit case where an Oklahoma state law explicitly modified the common law rights at issue. No such similar modification exists in New York and defendants have presented no reason why the deposit of funds into the court would trigger Rule 64 of the Federal Rules of Civil Procedure.

Accordingly, because these doctrines are invoked in and recognized in equity, the Cosgrove Defendants are required to deposit the funds into the court pending the outcome of the underlying merits.

### Cross–Motion to Amend the Answer

Rule 13(f) of the Federal Rules of Civil Procedure provides "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, the pleader may by leave of court set up the counterclaim by amendment." The standards enunciated in the July 7th opinion for leave to amend the initial counterclaims are equally applicable here. *See Northwestern Nat'l Ins. Co. v. Alberts*, 717 F.Supp. 148, 153 (S.D.N.Y. 1989) (construing Rule 13(f) in conjunction with Rule 15(a), considering compulsory nature of counterclaims, whether pleader acted in good faith and timely, and when considering the counterclaim's merit applying standards under Rule 12(b)(6) construing counterclaims allegations in light most favorable to defendant and accepting allegations as true).

According to the Cosgrove Defendants, the First Count of the Amended counterclaim is "essentially a consolidation of the fraud claims stated in Counts I and II of the Counterclaim." The Third, Fourth and Eleventh counts of the Amended Counterclaim are "virtually identical to existing Counts II, IV, and V". The Seventh, Eight and Ninth Counts state statutory causes of action for securities fraud. The Second (breach of fiduciary duty), Fifth (intentional interference with contractual relations) and Sixth (aiding and abetting another's breach of fiduciary duty) counts alleged common law torts, all arising out of the common nucleus of facts set forth in the First Count. The Tenth Count is a RICO count.

Northwestern does not oppose the proposed new affirmative defenses—twelfth through Seventeenth—and thus leave to assert these is granted. Northwestern contends that the proposed amended and additional counterclaims fail to state a claim upon which relief can be granted and therefore should be denied as futile. The compulsoriness of the counterclaims is not challenged.

### Rule 9(b)

█ Northwestern opposes the Amended Counterclaim asserting that Rule 9(b) is violated by the "lumping together" of several parties under a "conspiracy" among

Northwestern, Michael Alberts, Esrine, Finley Kumble and "numerous [unidentified] others".

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Second Circuit recently described three aims served by Rule 9(b):

(1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike suits.

*Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

Rule 9(b) permits a litigant to plead intent generally, as long as the complaint alleges facts sufficient to support an inference of fraudulent intent. *See, e.g., Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). When more than one defendant is charged with fraud, however, the complaint must particularize each defendant's alleged participation in the fraud. *Leslie v. Minson,* 679 F.Supp. 280, 284 (S.D.N.Y. 1988) (citations omitted).

Six of the eleven counts implicate Rule 9(b). The factual underpinnings for the fraud claims are all set forth in the First Count and incorporated by reference in each of the succeeding counts. In the July 7th opinion, the counterclaim was found sufficient under 9(b) standards. The amended counterclaim builds on the prior counterclaims and is thus also sufficient under Rule 9(b) for the same reasons set forth in the prior opinion. Northwestern's objection to the "bare bones" conspiracy allegation is unfounded; the Cosgrove Defendants need not expressly allege an agreement to conspire when the factual allegations will support a finding of conspiracy or at least a tacit agreement by which concerted action may be inferred. *See Grosser v. Commodity Exch., Inc.,* 639 F.Supp. 1293, 1310–11 (S.D.N.Y.1986), *aff'd,* 859 F.2d 148 (2d Cir.1988) (quoting *First Federal Savings and Loan Assoc. v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427, 443 (S.D.N.Y.1986)). The Cosgrove Defendants have sufficiently alleged the factual underpinnings of a tacit unlawful agreement and would have leave to amend to replead the phrase "agreed to misrepresent/defraud etc.".

*Loss Causation*

Northwestern's contention that the Cosgrove Defendants fail to allege "loss causation", how the misrepresentation caused the loss as opposed to other factors, is persuasive. The defendants have plead that Northwestern made representations inducing defendants into the restructuring agreement and the defendants suffered a loss because of those representations that they would not have suffered had they known the truth because they would then have "walked" as did the released limited partners.

Although the Cosgrove Defendants need not prove in the pleadings that there is no other cause underlying the loss, *see e.g., Bastian v. Petren Resources Corp.,* 892 F.2d 680, 685 (7th Cir.1990), *cert. denied,* — U.S. —, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), they must allege that "but for" the misrepresentations "the investment would not have lost its value." *In re Gas Reclamation, Inc. Secur. Litig.,* 733 F.Supp. 713, 721 (S.D.N.Y.1990). Consequently, assertions that the Cosgrove Defendants would not have entered the restructuring agreement and suffered the alleged loss thereto, namely their posture prior to the restructuring—the forfeiting of their prior defenses to the 1984 promissory notes and their undivided interests in the "previously unencumbered" pipeline is insufficient as a pleading. *See id.* ("Allegations that but for the fraudulent statements and omission, the plaintiffs would not have invested in the transaction in which they lost money are not sufficient."). Accordingly, to the extent loss causation is a requirement of the counts pled, the Cosgrove Defendants are granted leave to replead consistent with this requirement or if unable to, the claims resting upon loss causation are denied as unable to sustain a motion to dismiss.

*The Second Count*

The proposed Second Count alleges a breach of fiduciary duty by Northwestern derived, allegedly, "by virtue, *inter alia,* of powers of attorney granted by them to Northwestern in connection with both the 1984 Bond and the 1987 Bond." Although Northwestern claims that others had powers of attorney, the language of the 1987 Surety Agreement states "I hereby irrevocably appoint Northwestern as my attor-

ney-in-fact to execute and deliver to the Bank, Southern Reserve, and any other person...." Accordingly, leave is granted to amend the Second Count on the basis of this allegation.

*Leave is Granted to Amend the Third, Fourth and Eleventh Counts*

As leave was granted in the prior opinion, to the extent the Cosgrove Defendants can comply with the loss causation requirements discussed above, leave is granted for the Third and Fourth Counts. The Eleventh Count, contrary to Northwestern's assertion, has not been mooted by intervening offset proceedings.

*The Fifth and Sixth Counts Comply with Rule 8 Pleading Requirements*

Northwestern opposes the claims of intentional interference with contract as conclusory and not sufficiently pled and the aiding and abetting claim on the already rejected 9(b) ground, the rejected lack of fiduciary ground in the discussion of count two, and failure to allege the factual underpinnings of the claim. Nonetheless, the incorporated facts alleged under Count One are sufficiently pled to withstand this motion, with the exception of the loss causation requirement discussed above that must be demonstrated to satisfy pleading the requirements of aiding and abetting. *In Re Gas Reclamation, Inc. Secur. Litig.*, 733 F.Supp. at 721.

*The Seventh, Eighth, and Ninth Counts*

■ To the extent these claims implicate Rule 9(b) and loss causation, the same conclusions discussed above hold here as well. Additionally, with respect to Northwestern's contentions that it was not a "control person" or "seller" within the statutory meanings of those appellations, the defendants have alleged facts incorporated under Count One to sustain a claim that Northwestern's role qualifies as a "control person" within the meaning of the New Jersey Statute. The Cosgrove Defendants have not, however, alleged that Northwestern was a "seller" within the meaning of *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), that it "solicited the sales in question for a financial gain" *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989). Although Northwestern admits the financial interest, the Cosgrove Defen-

dants have not alleged that Northwestern or its agent personally solicited the sales for each defendant. *See In re Gas Reclamation*, 733 F.Supp. at 723 ("Each investor, therefore, must prove that Esrine, as Northwestern's agent, personally solicited him or her."). It is not sufficient that the amended counterclaims merely alleges substantial or active participation in the sale of the underlying securities. *Id.* Consequently, leave to replead the amended claims is granted on the condition that the Cosgrove Defendants can amend to allege that Northwestern or its agent personally solicited the sales for each defendant and meet the loss causation requirement of Eighth Count.

*The RICO Count*

■ Northwestern contests the Cosgrove Defendants amended counterclaims with respect to several components [2] of a RICO claim as set forth by the Second Circuit in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

The amended complaint sufficiently alleges the RICO defendants to be Northwestern and Esrine as its agent and the predicate acts are pled with sufficient particularity.

Pursuant to § 1962(c), defendants in the amended claims have characterized the enterprise as an "association in fact" defined as set forth in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981) and sufficiently have alleged the common ongoing purpose of this association to the extent that the agreements have continued and the promissory notes underlying the transactions contemplated this ongoing relationship. *See In re Gas Reclamation*, 659 F.Supp. 493, 517 (S.D.N.Y.1987).

Similarly, although Northwestern contends that those predicate acts fail to constitute a "pattern of racketeering activity" encompassing the continuity requirement, the RICO Count alleges a scheme, ongoing in nature beginning no later than July 1986 and continuing through the present. The relatedness and continuity requirements set forth in *H.J. Inc. v. Northwestern Bell*, — U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989), are met here in that the

---

**2.** No challenge has been made to the requirements that the activities affect interstate commerce, and the direct or indirect investment or participation in the enterprise.

scheme alleged contemplated a long-term course of fraudulent conduct and was executed with over twenty investors in a like manner for a common goal. *See also Proctor & Gamble v. Big Apple Indus. Bldgs. Inc.*, 879 F.2d 10, 17 (2d Cir.1989) (explaining continuity and relatedness requirements).

Finally, although the Cosgrove Defendants have alleged injuries ascribed to the RICO violations, for the reasons discussed with respect to loss causation, it is not clear that causation has been established as required. *See In re Gas Reclamation*, 659 F.Supp. at 518 (causation required to sustain civil RICO action).

Accordingly, the cross-motions to allege the counterclaims are granted only to the extent these defects can be cured.

*The Discovery Motion*

The motion to compel discovery, made over opposition, is granted as set forth below:

Any correspondence between Northwestern and Best for the period 1982–1984 will be produced. The Northwestern file relating to Esrine will be produced with leave granted to apply for additional discovery based on that file if necessary. The Finley Kumble invoices related to the GRI matter will be produced.

*Conclusion*

For the reasons set forth above, the motion to compel discovery is granted, the motion for leave to amend and preliminary injunction is granted, and the cross-motion to add Esrine as a defendant is granted and to amend is granted in part to the extent not inconsistent with the above discussion. Settle order on notice.

It is so ordered.

## MEMORANDUM OPINION

### On Motion for Vacatur and Reconsideration

Defendants have moved for vacatur of the July 9th Order (the "Order") and reconsideration of the June 25th Opinion (the "Opinion") on which it was based. A portion of this motion was addressed in an order issued in Part I by the Honorable Kenneth Conboy on August 10th 1990. A portion of this motion is withdrawn by an order issued in conjunction with this memorandum opinion and is currently pending

appeal to the Second Circuit. The remaining issues addressed herein concern the position of two defendants Norton and Silva, pleading requirements, and the discovery issues addressed in the Opinion and the Order.

*Defendants Norton and Silva*

The Opinion at page 429 states that "each of the defendants allegedly executed an 'Agreement with Surety' in favor of Northwestern." The opinion is amended to add the following footnote after the word "allegedly":

Defendant Norton and Silva both contest the validity of the Surety Agreement with Northwestern. Defendant Silva in deposition testimony testified first that the signature on the agreement "looked" like his signature and then that it was not his signature. All parties agree that Defendant Norton did not actually sign the agreement but that his secretary signed and notarized the agreement. A factual hearing must be held to determine whether Silva did sign the agreement and whether Norton authorized the signature of the Surety Agreement (there is no dispute that Norton signed both the Power-of-Attorney and the Assumption Agreement and that Northwestern made payments on behalf of Norton to the Bank) or is estopped from contesting the agreement because either a common law principal/surety relationship had been established or Northwestern reasonably relied upon the apparent authority of Norton's secretary who executed document.

In the interim, the Order to pay into the Court shall not apply to either defendant Silva or Norton.

*Pleading Requirements*

*Loss Causation*

The Order required the Defendants to plead loss causation with respect to the First, (common law fraud), Third (constructive fraud), Fourth (Breach of duty of good faith), Fifth (tortious interference with contract), Sixth (aiding and abetting breach of fiduciary duty), Eighth (federal securities fraud) and Tenth (RICO) Counts of the Counterclaim. The Cosgrove Defendants contend that loss causation is applicable only to the Eighth Count and to the Tenth Count to the extent that the alleged predicate acts consist of securities fraud.

### First and Third Count

The opinion held that whether or not the Defendants plead an agreement to misrepresent is immaterial because the factual underpinnings of a tacit agreement had been pled with sufficiency under Count One. The amended counterclaim may but need not incorporate the express language of the alleged conspiracy. *See Grosser v. Commodity Exch., Inc.,* 639 F.Supp. 1293, 1310 (S.D.N.Y.1986). Count One and Three allege common law fraud, however, and therefore must plead loss or proximate causation under the standard rule of tort law. *See Bennett v. United States Trust Co.,* 770 F.2d 308, 316 (2d Cir.1985) (requiring adequate causation to plead common law fraud).

### Fourth, Fifth, and Sixth Counts

The Fourth (constructive fraud), Fifth (tortious interference) and Sixth (aiding and abetting breach of duty) counts are common law tort counts and therefore must comply with the standard requirements under tort law, including causation, be it termed loss causation or proximate causation. The Opinion is amended to delete the last sentence of page 435 and the reference to *In Re Gas Reclamation,* which concerned aiding and abetting with respect to allegations of securities violations. The last line of the Opinion should read and the Order reflect that: "Nonetheless, the incorporated facts alleged under Count One are sufficiently pled to withstand this motion, with the exception of the causation requirement, as discussed above, that must be demonstrated to satisfy the pleading requirements of these common law torts."

### Seventh and Ninth Counts

Paragraph 3(d) of the order is modified to provide leave to amend to the extent the Seventh and Ninth counts are based upon "control person" liability. To the extent liability is based upon "seller" liability in these counts, leave to amend is granted provided that the Defendants plead that Northwestern personally solicited the sales for each defendant.[1]

### Eighth and Tenth Count

The requirement of loss causation pleading in the Eighth and Tenth Counts is not disputed.

### Discovery

The defendants' assertion that Northwestern has waived any purported right to assert "confidentiality" or privilege as a basis for withholding the documents in question is rejected. The language in the Order stands even though the opinion addressed the relevance of the documents and stated no express finding that the production should be conditioned; Northwestern retains its right to move under appropriate circumstances on the basis of privilege and the defendants' have set forth no reason, besides waiver, to deny a confidentiality order.

It is so ordered.

---

**1.** "Personally" is used as "directly" not as "in-person" as the Defendants have sought to read the Opinion for purposes of reargument. *See In re Gas Reclamation, Inc. Securities Litig.,* 733 F.Supp. 713, 723 (S.D.N.Y. 1990).