937 F.2d 77
 20 Fed.R.Serv.3d 268
 NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE,
WISCONSIN, Plaintiff-Appellee,
v.
Michael J. ALBERTS, James R. Alberts, Richard J. Alberts,
Cassandra M. Sheehan, Raymond Cosgrove, Penelope A. Boyle,
John C. Maucere, Jerry Silva, Michael L. Metheny, H.U.A.
Resources, Inc., Alton Jones, Arthur Lawson, John J. Muller,
Michael J. O'Connell, Randolph K. Pace, Southern Companies,
Inc., Michael J. McCann, William Curran, James M. McCabe,
Harold A. Thau, Patrick J. Rooney, Van Allen Capital Corp.,
and Robert T. Norton, Defendants,
James R. Alberts, Richard J. Alberts, Cassandra M. Sheehan,
Penelope A. Boyle, Harold A. Thau, Patrick J. Rooney,
Raymond Cosgrove, John J. Muller, William Curran, James M.
McCabe, Robert T. Norton, Jerry Silva, Michael J. McCann,
Defendants-Appellants.
 Nos. 627, 628 and 629, Dockets 90-7708, 90-7710 and 90-7742.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 5, 1990.
Decided June 28, 1991.
 
 Robert A. Goodsell, New York City (Mary H. Post, George W. Keefer, III, Irwin and Post, New York City, of counsel), for defendants-appellants Cosgrove, Thau, Muller, Curran, and McCabe.
 Vernon & Aaron, Shrewsbury, N.J. (Robert A. Weir, Jr., Shrewsbury, N.J., of counsel), for defendants-appellants James R. Alberts, Richard J. Alberts, Sheehan, Boyle, and Rooney, filed a letter joining the brief of defendants Cosgrove et al.
 Jerome R. Halperin, New York City, for defendants-appellants Silva and McCann, filed a letter joining the brief of defendants Cosgrove et al.
 Benjamin D. Lentz, New York City (H. Adam Prussin, Peter Reiser, James E. Scranton, Hart & Hume, New York City, Weil Gotshal & Manges, New York City of counsel), for plaintiff-appellee.
 Before KEARSE, MAHONEY and McLAUGHLIN, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Defendants-appellants, individuals who have failed to make payments under certain loan assumption agreements, appeal from a preliminary injunction entered in the United States District Court for the Southern District of New York, Robert W. Sweet, Judge, requiring that they pay their share of a final installment of a loan into court. The district court premised preliminary relief upon the ground that plaintiff-appellee Northwestern National Insurance Company of Milwaukee, Wisconsin ("Northwestern"), which had contracted to act as surety for defendants' obligations, was entitled to immediate enforcement of its common law rights of exoneration and quia timet. Northwestern Nat'l Ins. Co. v. Alberts, 741 F.Supp. 424 (S.D.N.Y.1990).
 
 
 2
 We conclude that only Raymond Cosgrove, Harold A. Thau, John J. Muller, William Curran, and James M. McCabe (the "Cosgrove Defendants") have perfected an appeal to this court. The notices of appeal filed by all other defendants were ineffective because they were filed during the pendency of a motion for reconsideration. See Fed.R.App.P. 4(a)(4). As to the Cosgrove Defendants, however, we vacate the preliminary injunction in reliance upon Borey v. National Union Fire Ins. Co., 934 F.2d 30 (2d Cir.1991). The appeal is dismissed as to the remaining defendants-appellants.Background
 
 
 3
 This litigation arises from a project to construct and operate a gas pipeline in Oklahoma. Defendants-appellants, together with others, originally participated in the project as limited partners in Southern Pipeline Partners (the "Partnership"). They invested early in 1985 by executing promissory notes payable to the Partnership in varying amounts calculated at $185,000 per unit, each unit representing a 2.70% interest. The notes were then negotiated to Equilease Corporation ("Equilease"). To induce Equilease to purchase the promissory notes, Northwestern issued a surety bond guaranteeing payment by the limited partners, who in turn agreed to indemnify Northwestern. After reducing the principal balance by $925,000, the Partnership stopped making payments to Equilease in June 1986. Northwestern thereafter made payments, as surety, of $2,095,688.66 to Equilease on behalf of the limited partners.
 
 
 4
 In February 1987, the parties effected a restructuring of the pipeline project designed, inter alia, to compromise and retire the remaining obligations to Equilease. Among the participants were Southern Reserve, Inc. ("Reserve") and its wholly-owned subsidiary Southern Pipeline Development, Inc. ("Development"), a general partner of the Partnership. As found by the district court, the restructuring consisted of:
 
 
 5
 (1) the transfer of the partnership's assets to Reserve; (2) Reserve's borrowing of $6,845,000 from a new financial institution; (3) the assumption by the former limited partners of the $6,845,000 borrowing by execution of assumption agreements; (4) Northwestern issuing a financial guarantee bond in favor of the new financial institution guaranteeing the payments due under the assumption agreements; (5) Reserve and Development indemnifying Northwestern against all loss, cost and expense it would incur by issuing a new financial guarantee bond, and, as collateral security for their promise to indemnify, would grant to Northwestern a first security interest/mortgage in the transportation system; and (6) Reserve's use of the $6,845,000 loan proceeds to pay Equilease the remaining monies due on the limited partners' promissory notes (less a discount), reimburse Northwestern for the payments it had made to Equilease on behalf of the limited partners, and establishment of a fund of $700,000 to make improvements to the transportation system.
 
 
 6
 741 F.Supp. at 428.
 
 
 7
 At the closing on February 12, 1987, Reserve executed a promissory note (the "Note") in the principal amount of $6,845,000 and delivered it to Merchant Marine Bank (the "Bank"). The principal amount was payable in three installments: two payments of $2,280,000 due December 31, 1987 and 1988, and a final payment of $2,285,000 due December 31, 1989. Quarterly interest was also payable over that period. The former limited partners of the Partnership, including the defendants-appellants, undertook liability for the Note through assumption agreements. Northwestern secured payment under the assumption agreements by issuing a financial guarantee bond in favor of the Bank. In turn, defendants-appellants executed agreements with Northwestern undertaking to indemnify Northwestern for any resulting loss.
 
 
 8
 After making the first two quarterly interest payments, both Reserve and the makers of the assumption agreements defaulted on their obligations with respect to the Note. Pursuant to its guarantee bond, Northwestern began in November 1987 to cover the payments to the Bank. In May 1988, Northwestern commenced this diversity action, seeking indemnification from all defendants and a declaration of their liability for Northwestern's future outlays under the bond. Various defendants filed a variety of counterclaims.
 
 
 9
 By early 1990, Northwestern had paid a total of $5,816,807 to the Bank pursuant to its obligations as surety, and the Bank had notified Northwestern that it would be demanding payment on the final installments of principal and interest that had become due December 31, 1989. Northwestern thereupon sought "leave to amend its complaint to add a new count asserting its surety rights of exoneration and quia timet, and move[d] for a preliminary injunction to enforce these rights by compelling the defendants/principals to pay into the court their respective portions of the $2,285,000 final installment (plus accrued interest) due to the bank." 741 F.Supp. at 429.
 
 
 10
 The district court allowed the amendment and granted the preliminary injunction. The court began by briefly explaining the common law rights that Northwestern had asserted:
 
 
 11
 Quia timet is a right used to protect a party against an anticipated future injury when it cannot be avoided by a present action at law, for example, by allowing a surety to compel its principal to post collateral for an anticipated liability. Exoneration is the right of a surety to compel its principal to pay for debt for which the surety's liability already has matured.
 
 
 12
 741 F.Supp. at 429.
 
 
 13
 The court thereafter determined that Northwestern would suffer irreparable harm absent preliminary enforcement of these common law rights. The district court explained that once Northwestern had made the final loan payment on behalf of the defendants, it would have lost the opportunity to compel them to pay the Bank directly:
 
 
 14
 The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights. Because the rights will extinguish if not asserted prior to the final payments, Northwestern must vindicate these principles of surety law now. As the Court in Barney found, "[u]nless the injunctive relief requested below is granted, [Northwestern] will not be adequately secured for its obligations and will forever and irreparably lose its rights of quia timet and exoneration." Northwestern Nat'l Ins. Co. v. Barney, C89-3936 (unpublished memorandum and order) (W.D. Ohio 1988). Therefore, the loss of the rights, not the potential financial loss, constitutes the irreparable harm. Cf. Citibank, N.A. v. Singer Co., 684 F.Supp. 382, 386 (S.D.N.Y.1988) (irreparable injury found where bank's customer refused to place bank with cash collateral on demand when bank feared it would not be repaid by customer under letter of credit application and agreement).
 
 
 15
 Id. at 431.
 
 
 16
 Hereafter, the dates, all of which are in 1990, are critical. An order was entered on July 10 (the "July 10 Order")[1] that granted the preliminary injunction from which this appeal is taken, and provided various other relief regarding the pleadings and discovery. The preliminary injunction ordered the defendants to pay into court their respective shares of the final installment of the loan by July 27. On July 23, the Cosgrove Defendants served a motion for the district court to reconsider the order both with respect to the granting of the preliminary injunction and to various other pleading and discovery issues, and the other defendants-appellants subsequently joined in that motion.
 
 
 17
 In Judge Sweet's absence, Judge Mukasey entered an order on August 10 (the "August 10 Order") that modified the July 10 Order by deferring from July 27 to August 16 the deadline for the payments required by the preliminary injunction. By letter to the court dated August 16, the Cosgrove Defendants sought to withdraw "that portion of their motion for reargument seeking reversal of the decision granting a preliminary injunction" in view of previously filed notices of appeal regarding the preliminary injunction. The court's order granting that request was signed by Judge Sweet on August 30 and entered the following day.
 
 
 18
 Meanwhile, the following notices of appeal were filed: (1) by the Cosgrove Defendants on August 8 from the July 10 Order; (2) by James R. Alberts, Richard J. Alberts, Cassandra M. Sheehan, Penelope A. Boyle, Harold A. Thau, and Patrick J. Rooney on August 9 from the July 10 Order; (3) by the Cosgrove Defendants on August 20 from the August 10 Order; (4) by Jerry Silva and Michael J. McCann on August 21 from the July 10 Order; (5) by Silva and McCann on August 24 from the July 10 Order and the August 10 Order; and (6) by the Cosgrove Defendants on September 10 from the July 10 Order and the August 10 Order.
 
 Discussion
 
 19
 Northwestern's preargument motion to dismiss the appeals was referred to this panel, which heard the appeal. Northwestern contends that the notices of appeal were ineffective because they were all filed while the Cosgrove Defendants' motion for reconsideration was pending. We agree as to all notices except that filed by the Cosgrove Defendants on September 10.
 
 
 20
 Fed.R.App.P. 4(a)(4) provides in pertinent part:
 
 
 21
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment ..., the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.
 
 
 22
 Following the clear language of this rule, the Supreme Court has held that a notice of appeal filed after a motion is made to alter or amend a judgment, and before the district court acts on that motion, is "a nullity." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982); see also McCowan v. Sears, Roebuck & Co., 908 F.2d 1099, 1102-04 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 250, 112 L.Ed.2d 209 (1990); Fisher v. Klein, 873 F.2d 626, 627 (2d Cir.1989) (per curiam).
 
 
 23
 The Cosgrove Defendants' motion for reconsideration, although it cited no particular procedural rule, was clearly a rule 59 motion to alter or amend the judgment embodying the preliminary injunction. See Osterneck v. Ernst & Whinney, 489 U.S. 169, 174, 109 S.Ct. 987, 990, 103 L.Ed.2d 146 (1989) ("[A] post-judgment motion will be considered a Rule 59(e) motion where it involves 'reconsideration of matters properly encompassed in a decision on the merits.' ") (quoting White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982)); McCowan, 908 F.2d at 1103 ("most substantive motions brought within ten days of the entry of judgment are functionally motions under Rule 59(e), regardless of their label or whether relief might also have been obtained under another provision"); Rados v. Celotex Corp., 809 F.2d 170, 171 (2d Cir.1986) (motion served within ten days of judgment that placed soundness of judgment in question was functional equivalent of rule 59(e) motion). Further, the interlocutory order granting a preliminary injunction is a "judgment" within the meaning of the rule 4(a)(4) provision relating to a motion "under Rule 59 to alter or amend the judgment." See McCowan, 908 F.2d at 1103 (rule applies to "any 'judgment,' defined in Fed.R.Civ.P. 54(a) to include 'a decree and any order from which an appeal lies' "); Turner v. HMH Publishing Co., 328 F.2d 136, 137-38 (5th Cir.1964) (per curiam) (appeal from preliminary injunction dismissed in view of pending motion to amend judgment granting injunction).
 
 
 24
 We note also that the motion for reconsideration was timely. Under Fed.R.Civ.P. 59(e), "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Although the motion was served on July 23, thirteen days after entry of the July 10 preliminary injunction, Fed.R.Civ.P. 6(a) provides that "[w]hen the period of time prescribed or allowed [by these rules] is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Since July 14-15 and 21-22 of 1990 were excludable Saturdays and Sundays, the motion for reconsideration was effectively served on the ninth day after the preliminary injunction was entered.
 
 
 25
 The Cosgrove Defendants contend that their letter of August 16 operated to withdraw their motion, thereby validating their amended notice of appeal filed the following day. This position ignores the plain language of rule 4(a)(4). A notice of appeal is ineffective unless filed after "entry of the order" disposing of a timely rule 59 motion. See Acosta v. Louisiana Dep't of Health & Human Resources, 478 U.S. 251, 254, 106 S.Ct. 2876, 2877, 92 L.Ed.2d 192 (1986) (per curiam) ("Rule 4(a)(4) constitutes an exception to the general rule that a notice of appeal filed after announcement of an order but before its entry in the docket will be deemed timely filed."). Accordingly, because the district court's order granting withdrawal of the rule 59 motion was not entered until August 31, 1990, each of the five notices of appeal filed in August was a nullity.
 
 
 26
 The notice of appeal filed by the Cosgrove Defendants on September 10, however, was clearly (in the language of rule 4(a)(4) ) "filed within the prescribed time measured from the entry of the [August 31] order," and thus vested in this court appellate jurisdiction over their appeal. We therefore address the merits of their appeal.
 
 
 27
 In Borey v. National Union Fire Ins. Co., 934 F.2d 30 (2d Cir.1991), we recently considered the precise issue presented by this appeal, and concluded that "the injunction enforcing the rights of quia timet and exoneration was improvidently granted because ... [the] surety ... has failed to establish any irreparable harm flowing solely from the loss of [those] rights." Id. at 35. Judge Sweet made the district court ruling that we vacated in Borey. See also Abish v. Northwestern Nat'l Ins. Co., 924 F.2d 448, 453-54 (2d Cir.1991) (loss of surety's rights to quia timet and exoneration does not cause irreparable harm where surety can be made whole upon resolution of merits). In doing so, he relied explicitly upon Northwestern Nat'l Ins. Co. v. Alberts, 741 F.Supp. 424 (S.D.N.Y.1990), the opinion under review herein. Borey is indistinguishable from this case, and accordingly compels vacatur of the preliminary injunction as to the Cosgrove Defendants, the only defendants who have perfected an appeal to this court from the district court order imposing the preliminary injunction.
 
 Conclusion
 
 28
 The preliminary injunction is vacated as to the Cosgrove Defendants. The appeal is dismissed as to the remaining defendants-appellants.
 
 
 
 [1]
 The pertinent docket entry initially indicated that the order granting the preliminary injunction was entered on July 6, but this is apparently an error, and the docket entry has since been changed to read July 10. The signature page of the order indicates signature by Judge Sweet on July 9. Judge Mukasey described the order as "an order dated July 9, 1990" in entering an order on August 10 that amended the initial order. Finally, Judge Sweet referred to that initial order as the "July 9th Order" in a subsequent memorandum opinion dated August 29. The stamp on the initial order reflecting its entry, although somewhat illegible because it is superimposed upon a stamp indicating the order's prior receipt (in the form of a proposed order) in Judge Sweet's chambers, appears to indicate that the order was entered on July 10